**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

**KONINKLIJKE PHILIPS N.V.,**

    **Plaintiff,**

    **v.**

**IDEAVILLAGE PRODUCTS CORP.,**

    **Defendants.**

Civ. No. 21-08706 (KM) (ESK)

**OPINION**

**<u>KEVIN MCNULTY, U.S.D.J.</u>:**

    Plaintiff Koninklijke Philips N.V., LLC ("Philips") commenced this design patent infringement action against IdeaVillage Products Corporation ("IdeaVillage").[1]

---

[1]    Citations to the record are abbreviated as follows:

    "Compl." = Complaint (DE 1)

    "Am. Compl." = Amended Complaint (DE 56)

    " '661 Patent" or "Grooming Apparatus" = Patent D758,661 (DE 1-1)

    " '368 Patent" or "Handle for Grooming Apparatus" = Patent D788,368 (DE 1-4)

    " '878 Patent" or "Shaving Head" = Patent D776,878 (DE 1-5)

    " '972 Patent" or "Blade for Hair Cutting Appliance" = Patent D870,972 (DE 1-6)

    " '346 Patent" or "Blade Set" = Patent D905,346 (DE 1-7)

    " '859 Patent" or "Nose and Ear Trimmer" = Patent D748,859 (DE 1-8)

    "Ex. A" = Plaintiff's Exhibit A (DE 1-1)

    "Ex. B" = Plaintiff's Exhibit B (DE 1-2)

    "Ex. C" = Plaintiff's Exhibit C (DE 1-3)

    "Ex. D" = Plaintiff's Exhibit D (DE 1-4)

    "Ex. E" = Plaintiff's Exhibit E (DE 1-5)

    "Ex. F" = Plaintiff's Exhibit F (DE 1-6)

    "Ex. G" = Plaintiff's Exhibit G (DE 1-7)

Two motions are now before the Court. First, is the motion of IdeaVillage (DE 57) to appeal Magistrate Judge Kiel's December 15, 2021 Letter ruling (DE 54), granting Philips leave to file the Amended Complaint. Also before the Court is the motion of IdeaVillage (DE 58) to dismiss the Amended Complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6).

For the reasons described herein, the Court **DENIES** IdeaVillage's appeal and **AFFIRMS** Judge Kiel's Order granting Philips leave to file the Amended Complaint. The motion to dismiss is **DENIED**.

## I.   BACKGROUND

The Court presumes familiarity with the nature and history of this litigation. I focus on the facts most relevant to the pending motions.[2]

### A. Allegations of the Initial Complaint

Philips, a company organized and existing under the laws of the Netherlands, manufactures personal grooming products. (Am. Compl. ¶¶ 2, 7.) For purposes of this business, Philips owns hundreds of design patents related to these grooming products. (*Id.* ¶8.)

In 2016, Philips released the OneBlade men's shaver, which Philips touted as "a wholly new and distinctively unique product design" that "greatly departed from the traditional … foil and rotary electric shavers … in the marketplace." (*Id.* ¶¶ 9, 10.) Philips owns several design patents related to the OneBlade shaver, including: (1) the '661 Patent; (2) the '368 Patent; (3) the '878

---

"Ex. J"  = Plaintiff's Exhibit J (DE 56 at 156-158)

"Ex. K" = Plaintiff's Exhibit K (DE 56 at 159-172)

"Ex. L" = Plaintiff's Exhibit L (DE 56 at 173-179)

"Ex. M" = Plaintiff's Exhibit M (DE 56 at 180-181)

"Ex. N" = Plaintiff's Exhibit N (DE 56 at 182-184)

"Ex. O" = Plaintiff's Exhibit O (DE 56 at 185-188)

[2]     "DE __" refers to the docket entry numbers in this case. "Compl." refers to the initial complaint. "PFAC" refers to the proposed first amended complaint, located at DE 23-2, Ex. 1.

Patent; (4) the '972 Patent; and (5) the '346 Patent (together, the "Asserted Patents'). (*Id.* ¶¶ 12-15.)

Philips also manufactures and sells a nose hair trimmer which Philips contends "stands out to an observing consumer." (*Id.* ¶¶ 17, 19.) To protect the overall design of Philips's nose hair trimmer, Philips owns the '859 Patent. (*Id.* ¶ 18.)

IdeaVillage is a "direct-to-consumer" marketer that similarly sells men's grooming products, under the MicroTouch brand. These include the first and second generation MicroTouch Solo shavers (together, the "MicroTouch Solos") and MicroTouch Titanium Max trimmer. (*Id.* ¶¶ 20-21, 32.)

In Count 1, Philips alleges that IdeaVillage's MicroTouch Solos copy the patented ornamental design of its Grooming Apparatus. (*Id.* ¶ 47.) (Like in my opinion dismissing the Initial Complaint, the Philips Grooming Apparatus and MicroTouch Solos are displayed for comparison in Ex. 1 to this Opinion.)

In Count 2, Philips alleges that IdeaVillage's MicroTouch Solos copy the patented ornamental design of its Handle for Grooming Apparatus. (*Id.* ¶ 60.) (The Philips Handle for Grooming Apparatus and MicroTouch Solos are displayed for comparison in Ex. 2 to this Opinion.)

In Count 3, Philips alleges that IdeaVillage's first generation MicroTouch Solo copy the patented ornamental design of its Shaving Head. (*Id.* ¶ 72.) (The Philips Shaving Head and first generation MicroTouch Solo are displayed for comparison in Ex. 3 to this Opinion.)

In Count 4, Philips alleges that IdeaVillage's first generation MicroTouch Solo copy the patented ornamental design of its Blade for Hair Cutting Appliance. (*Id.* ¶ 84.) (The Philips Blade for Hair Cutting Appliance and first generation MicroTouch Solo are displayed for comparison in Ex. 4 to this Opinion.)

In Count 5, Philips alleges that IdeaVillage's MicroTouch Solos copy the patented ornamental design of its Blade Set. (*Id.* ¶ 97.)[3] (The Philips Blade Set and MicroTouch Solos are displayed for comparison in Ex. 5 to this Opinion.)

In Count 6, Philips alleges that IdeaVillage's MicroTouch Titanium Max copy the patented ornamental design of its Nose and Ear Trimmer. (*Id.* ¶ 109.) (The Philips's Nose and Ear Trimmer and MicroTouch Titanium Max are displayed for comparison in Ex. 6 to this Opinion.)

## B. Dismissal of the Initial Complaint

I filed a decision granting in part and denying part IdeaVillage's motion to dismiss for failure to state a claim. First, I dismissed Counts 1, 2 and 5 of the Initial Complaint. With respect to Counts 1 and 2, I determined that "the '661 and '368 patent designs are not substantially similar to the MicroTouch Solo exemplars." (DE 36 at 11-12.) As for Count 5, I found that "the second generation MicroTouch Solo blade is not so similar as to suggest a plausible allegation of infringement of the '346 patent." (*Id.* at 14-15.)

However, I allowed the following counts from the Initial Complaint to proceed: (1) Count 3, as to the first generation MicroTouch Solo's alleged infringement of Philips's Shaving Head; (2) Count 4, as to the first generation MicroTouch Solo's alleged infringement of Philips's Blade for Hair Cutting Appliance; and (3) Count 6, as to the MicroTouch Titanium Max's alleged infringement of the Nose and Ear Trimmer. (*Id.* at 12-15.)

## C. New Factual Allegations

In the Amended Complaint, Plaintiff: (1) realleges Counts 1, 2, and 5, dismissed in my prior opinion, but now provides further factual allegations concerning the purported ordinary observer of IdeaVillage's allegedly infringing products; and (2) amends Counts 3, 4, and 6, with similar factual allegations, despite the Court allowing those counts to proceed in my prior opinion. With

---

[3]      The Initial Complaint and the Amended Complaint incorrectly identify the '346 patent as the Blade for Hair Cutting Appliance.

respect to those counts, the Amended Complaints adds the following paragraphs:

- On information and belief, an ordinary purchaser or potential purchaser of the MicroTouch Solo[s] … is a male teenager or younger adult, ages of 16-34. This is consistent with the pictures and videos depicting the target customers on IdeaVillage's website for these shavers. Public articles and reviews also describe these shavers as "Best Electric Shaver for Teenager[s] and a "perfect device" "for beginner shavers" or "adolescent boy[s]." (Am. Compl. ¶ 26.)

- On information and belief, the ordinary purchaser or potential purchaser would not pay considerable attention when purchasing … the MicroTouch Solo[s] … because of the low price point of the shavers and ease of purchase for the product…. Further, the ordinary purchaser or potential purchaser can easily and quickly purchase the MicroTouch Solo[s] … through online websites, including Amazon, using a credit card. On information and belief, the ordinary purchaser or potential purchaser pay less attention to the purchase of the MicroTouch Solo[s] … because of the ease of access the ordinary purchaser or potential purchaser has to purchasing the products. Given the target demographics of the products purchasers, low price points of such products, and ease of quick payments, the MicroTouch Solo[s] … are impulse-purchases[.] (*Id.* ¶ 27.)

- On information and belief, the ordinary purchaser or potential purchaser would not pay much attention when purchasing … the MicroTouch Solo[s] … because of how the products are displayed to the ordinary purchaser or potential purchaser when considering a purchase or comparing with other products. For example, when viewed and purchased in-person, the … products are displayed on a crowded shelf and in packaging that hides a significant portion of the product. Additionally, when viewed and purchased on-line, the products are depicted in photographs and videos that only show portions of the product making it difficult to appreciate the design differences between the MicroTouch Solo[s] … and other shavers." (*Id.* ¶ 28.)

- On information and belief, the ordinary purchaser or potential purchaser would not pay much attention when purchasing … the MicroTouch Solo[s] … because the products are not long-term purchases that require studied care, product category research, and purchaser financial budgeting. For example, IdeaVillage offers only a short two-year replacement warranty on its MicroTouch Solo shavers. Similarly, IdeaVillage recommends replacing the shaver heads of the MicroTouch Solo shavers ever four months. (*Id.* ¶ 29.)

- On information and belief, the ordinary purchaser or potential purchase would not pay much attention to branding or labeling found on a

product, such as the SOLO branding found on the MicroTouch Solo[s] ...
because of the prevalence in the marketplace of intellectual property
rights licensing for use with third-party products and the practice of
companies offering the same products under multiple brand names to
target different price points within a given market. Given such practices,
different brand names or labelling appearing on products with
substantially similar designs will not necessarily distinguish the
underlying and overall designs to the ordinary purchaser or potential
purchaser. On information and belief, the ordinary observer and
purchaser will instead consider the overall product appearance. On
further information and belief, the ordinary observer or potential
purchaser are prone to view the SOLO branding found on the
MicroTouch Solo[s] ... as merely a source indicator and not a design
element. For example, on information and belief, the ordinary observer
or potential purchaser would not consider the SOLO branding on the
MicroTouch Solo[s] ... as rendering the overall designs of the MicroTouch
Solo[s] ... plainly dissimilar to the claimed designs of [Philip's patents]."
(*Id.* ¶30.)

- Given the allegations of paragraphs 26-30 and on information and belief,
  the ordinary observer purchasing the MicroTouch Solo[s] ... would also
  not pay attention to the designs of these products sufficiently detect the
  subtle differences and individual elements and would instead generally
  take-away the overall visual impression of such product designs in their
  entireties and determine that these overall visual impressions are
  substantially similar to the claimed designs of the" Asserted Patents. (*Id.*
  ¶ 31.)

Finally, as to Counts 1 through 5, the Amended Complaint refers to
paragraphs 26 through 31 to: (1) "describe the ordinary observer" of
IdeaVillage's allegedly infringing products; and (2) illustrate "the attention the
ordinary observer would give when purchasing" these products. (*Id.* ¶¶ 28-29,
36, 40, 45, 52.)

After stating the standard of review, I address IdeaVillage's appeal of the
Judge Kiel's Order granting Philips granting leave to amend and IdeaVillage's
motion to dismiss the complaint.

## II. DISCUSSION

### A. Standards

### 1. Standard of Review of a Magistrate Judge's Decision

A District Court will reverse a Magistrate Judge's decision on a non-
dispositive motion only if it is "clearly erroneous or contrary to law." Fed. R.

Civ. P. 72(a). This standard requires the District Court to review findings of fact for clear error and to review matters of law *de novo*. *Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 91 (3d Cir. 1993).

"A Magistrate Judge's finding is clearly erroneous when, although there may be some evidence to support it, the reviewing court, after considering the entirety of the evidence, is left with the definite and firm conviction that a mistake has been committed." *Coyle v. Hornell Brewing Co.*, No. 08-2797, 2009 WL 1652399, at *3 (D.N.J. June 9, 2009); *Dome Petroleum Ltd. v. Employers Mut. Liab. Ins. Co.*, 131 F.R.D. 63, 65 (D.N.J. 1990) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). "A [ruling] is contrary to law if the magistrate judge has misinterpreted or misapplied applicable law." *Gunter v. Ridgewood Energy Corp.*, 2 F. Supp. 2d 162, 164 (D.N.J. 1998). The appealing party bears the burden of establishing that the Magistrate Judge's decision was clearly erroneous or contrary to law. *Marks v. Struble*, 347 F. Supp. 2d 136, 149 (D.N.J. 2004).

## 2. Motion to Dismiss Standard

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief.") (citation omitted). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013).

That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' … it asks for more than a sheer possibility." *Id.*

Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Defendants, as the moving party, bear the burden of showing that no claim has been stated. *Animal Sci. Prods., Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).[4]

---

[4] In its opposition to IdeaVillage's motion to dismiss, Philips once again claims that a complaint of design patent infringement is subject to what amounts to a specialized and relaxed pleading standard: "(1) an allegation of the ownership of the patent; (2) the name of the defendant; (3) the patent number allegedly infringed; (4) a statement of [how] the defendant allegedly infringes; and (5) the section of the patent laws invoked." (DE 66 at 6 (citing *2109971 Ontario Inc. v. Matrix Hosp. Furniture Inc.*, No. CV2111412KMCLW, 2022 WL 154411, at *3 (D.N.J. Jan. 14, 2022) (granting default judgment in favor of plaintiff and against defendant enjoining further acts of patent infringement)). It is true that these are the essential legal elements of design patent infringement. As for the adequacy of pleading, however, the *Iqbal/Twombly* standard applies to complaints, including those of patent infringement. *Robern, Inc. v. Glasscrafters, Inc*, 206 F. Supp. 3d 1005, 1010 (D.N.J. 2016). Indeed, the Court in *Robern* noted that both the Supreme Court of the United States and the Third Circuit have held that the *Iqbal/Twombly* pleading standard applies in all civil cases and, since "the abrogation of Rule 84 and Form 18, there is no longer any credible conflict between Supreme Court precedent and Form 18." *Id.*

Under *Twombly/Iqbal*, it is not enough to state the nature of the alleged infringement; the infringement must be alleged factually and plausibly. If a court after employing the applicable ordinary observer test finds that there is no plausible, factual allegation from which a reasonable fact finder could find infringement, that court may dismiss the claim on a Rule 12(b)(6) motion. *See Curver Luxembourg, SARL v. Home Expressions Inc.*, 2018 WL 340036, at *9 (D.N.J. Jan. 8, 2018); *accord Colida v. Nokia, Inc.*, 347 F. App'x 568, 569-70 (Fed. Cir. 2009); *MSA Prods., Inc. v. Nifty Home Prods., Inc.*, 883 F. Supp. 2d 535, 540 (D.N.J. 2012).

**B. IdeaVillage's Motion to Amend**

In granting Philips leave to amend the Initial Complaint, Judge Kiel determined that the Amended Complaint was not futile in that it would withstand a motion to dismiss. (DE 54 at 9; *see also Massarsky v. Gen. Motors Corp.*, 706 F.2d 111, 125 (3d Cir. 1983).)[5]

First, Judge Kiel rejected IdeaVillage's contention that Philips's motion to amend was a "thinly-veiled" motion for reconsideration. (*Id.* at 8; *see also* DE 57 at 7 n. 3.; DE 65 at 4.) Rather, he found that Philips's motion was "a good faith attempt to directly address" the Court's reasons for dismissing Counts 1, 2, and 5. (DE 54 at 10.) Judge Kiel expressed that Philips was not arguing that there had "been an intervening change in the controlling law, that there [was] new evidence available that was previously unavailable, or that [my] dismissal opinion present[ed] a clear error of law or fact or caused manifest injustice. (DE 54 at 9-10 (citing *Arrington v. McRae*, 683 F. App'x 108, 109 (3d Cir. 2017).) Instead, Judge Kiel found that Philips's amended allegations concerning the ordinary observer or consumer was an effort to address the deficiencies I identified in my opinion dismissing the Initial Complaint. (*See id.* at 9.)

Second, Judge Kiel disagreed with IdeaVillage's contention that Philips's proposed allegations about the age group of the ordinary observer, along with that age group's alleged lack of attention at the point of sale, were futile because I found that: (1) the '661 and '368 patents are not substantially similar to the MicroTouch Solo exemplars; and (2) the second generation MicroTouch Solo blade is not substantially similar to the '346 patent. (*Id.*) Judge Kiel found that Philips overcame "the futility threshold by proposing to add allegations that [IdeaVillage's] products would appear to the ordinary observer as being substantially similar to [Philips's] designs when in the packaging on store

---

[5]     Judge Kiel also concluded that Philips had "not engaged in undue delay, bad faith, dilatory motive, or prejudicial conduct," which IdeaVillage did not raise in its opposition to Philips's motion to amend. DE 54 at 10.

shelves." (*Id.* (citing *Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1380-81 (Fed. Cir. 2002).

     Third, Judge Kiel determined that my October 1, 2021 text order, stating that Philips was "free to file a properly supported motion to amend or for reconsideration," authorized Philips to attempt to rectify the deficient Initial Complaint by means of a proposed Amended Complaint. (*Id.* at 9-10.) Fourth, Judge Kiel ruled that the Amended Complaint's new "information and belief" allegations are proper, highlighting that the Court "found no particular fault in [the] dismissal opinion with [Philips's] use of that phrase." (*Id.* at 10.)

     On appeal, IdeaVillage submits arguments similar to those stated in their opposition to Philips's motion to amend. IdeaVillage claims that Judge Kiel committed error in determining that my dismissal of Counts 1, 2 and 5 "was premised on pleading deficiencies related to the ordinary observer." (DE 57 at 6.) According to IdeaVillage, the dismissal made no reference "to deficient allegations that Philip could remedy by amended pleading, particular with respect to Philips's allegations as to the "ordinary observer." (*Id.* at 6-7.)

     The motion to amend, to begin with, was properly brought. The October 1, 2021 Order clearly allowed Philips to file a proposed amended complaint. Moreover, my determination that the '661, '368, and '346 patents are not substantially similar to the allegedly infringing products was predicated, in part, on the governing "ordinary observer" standard of law, as applied to the factual allegations. Phillips has now added factual allegations which, it believes, would suffice to overcome the Court's determination that it had not sufficiently alleged substantial similarity. Following an initial dismissal, I would not ordinarily foreclose a litigant from supplementing its allegations in a proposed Amended Complaint.

     Next, IdeaVillage asserts that the new allegations are futile, *i.e.*, that they would be insufficient to repel a motion to dismiss (and, of course, it has moved to dismiss). (*Id.* at 8.) IdeaVillage's futility argument is twofold. First, IdeaVillage asserts that because the Court found that "*no* ordinary observer

would be induced to mistake" the '661, '368, and '346 patents with the accused patents, Philips's new allegations (1) describing the "alleged ordinary observer in more detail" and (2) illustrating the attention said ordinary observer would give the IdeaVillage "products at the point of sale" cannot succeed. (*Id.* at 8-12.) Second, IdeaVillage claims that most of Philips's new allegations concerning the alleged ordinary observer are "unsupported" and "unsubstantiated." (*Id.* at 9, 12; *see also* DE 65 at 5.)

As already stated, the Court's initial finding that the '661, '368, and '346 patents are not substantially similar to the accused products was based on the allegations in the Initial Complaint. A motion to amend following such a dismissal is commonplace. Theoretically, new and revised allegations could lead the Court to the reasonable inference that the ordinary observer could plausibly find the accused products substantially similar to the Asserted Patents. *See Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556.)

Threshold objections aside, we arrive at the substance of the motions. The issue is whether the new allegations push the complaint over the line to plausibility. The bulk of Philips's new ordinary-observer allegations are pled upon "information and belief."

The "information" component consists of certain new exhibits, which are repeatedly cited in the Amended Complaint's new paragraphs: (1) Exhibit J, a screengrab of the MicroTouch Solo website which displays the price and features of the product, as well as purchasing information; (2) Exhibits K and L, which are public articles and reviews about the MicroTouch Solo, in part, describing the product as the "Best Electric Shaver for Teenager[s]" and "perfect device" for both "beginner shavers" and "adolescent boy[s]"; (3) Exhibit M, which is IdeaVillage's two-year replacement warranty for the MicroTouch Solos; (4) Exhibit N, a screengrab from the MicroTouch Solo website recommending that consumers replace the blade head every four months; and (5) Exhibit O, a screengrab from the MicroTouch Max Titanium website

displaying the price and features of the product, along with the purchasing information. (DE 56, Ex. J-O.)[6]

Based primarily on the information in these new exhibits, Philips makes the following statements of belief:

- Because the "ordinary purchaser or potential purchaser of the MicroTouch Solo[s] … is a male teenager or younger adult, ages 16-34 … said purchaser would not pay considerable attention when purchasing [the products] … because of the low price point of the shavers and ease of purchase for the product." (*Id.* ¶¶ 26-27.)

- "[T]he ordinary purchaser or potential purchaser pays less attention to the purchase of the MicroTouch Solo[s] … because of the ease of access the ordinary purchaser or potential purchaser has to purchasing the products." (*Id.* ¶27.)

- "[T]he ordinary purchaser or potential purchaser would not pay much attention when purchasing the MicroTouch Solo[s] … because of how the products are displayed … when considering a purchase or comparing with other products." (*Id.* ¶ 28.)

- "[T]he ordinary purchaser would not pay much attention when purchasing [the Micro Touch Solos] … because the products are not long-term purchases that require studied care, product category research and purchaser financial budgeting." (*Id.* at ¶ 29.)

- "[T]he ordinary purchaser or potential purchaser would not pay much attention to branding or labeling found on a product such as the SOLO branding found on the MicroTouch Solo[s] … because of the prevalence in the marketplace of intellectual property licensing for use with third-party products and the practice of companies offering the same products under multiple brand names to target different price points within a given market." (*Id.* ¶ 30.)

- "[D]ifferent brand names or labelling appearing on products with substantially similar designs will not necessarily distinguish the underlying and overall designs to the ordinary purchaser or potential purchaser. On information and belief, the ordinary observer or potential purchase will instead consider the overall product appearance." (*Id.* ¶ 30.)

- "On information and belief, the ordinary observer purchasing the [MicroTouch Solos] … would also not pay great attention to the designs of these products to substantially detect the subtle differences and

---

[6]      The Amended Complaint new paragraphs also provide links to website featuring IdeaVillage's allegedly infringing products.

individual elements and would instead generally take-away the overall visual impression of such product designs in their entireties and determine that these overall visual impressions are substantially similar" to Philips's claimed patents. (*Id.* ¶31.)

The Third Circuit has stated that it is permissible to plead upon information and belief, most commonly "'[w]here it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control'—so long as there are no 'boilerplate and conclusory allegations and '[p]laintiffs … accompany their legal theory with factual allegations that make their theoretically viable claim plausible."[7] This Court has also expressed that "information and belief" allegations are not a mechanism for a plaintiff to "skate past a motion to dismiss with allegations that lack a sufficient basis," nor do they relieve said plaintiff "from the obligation to conduct an appropriate investigation into the facts that is reasonable under the circumstances." *Dicke v. Jialin Li*, No. 16CV2163KMMAH, 2017 WL 1011219, at *4 (D.N.J. Mar. 15, 2017) (citing Fed. R. Civ. P. 11(c) Advisory Committee Notes, 1993 Amendments). In short, a plaintiff cannot allege facts on information and belief without adequate investigation, simply because they might be true.

This is thin stuff. The Court frankly finds a certain disconnect between the information and the beliefs. Does a typical teenager (assuming he is the one paying) really pay *less* attention to a $25 expenditure than does a 40-year-old? Is a consumer really so indifferent to the qualities of a sharp implement, even an inexpensive one, that he will use daily on his face? Should the court find confusion because a box *may* be obscured by another package on a store shelf, or based on the routine fact that a product is available on amazon.com? Do consumers know that the same product may be licensed for sale under

---

[7]     *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x, 267-68 (3d Cir. 2016) (citing *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 11 F.3d 198, 216 (3d Cir. 2002); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997) (other citations omitted).)

different brand names?[8] What information about *its own* product market does the plaintiff believe will emerge from discovery directed against its adversary? In short, if the plaintiff does not currently possess this information, then who does?

This is not, however, a motion for summary judgment, but a motion to dismiss the complaint. The able Magistrate Judge—no less than myself a stand-in for the ordinary, reasonable consumer—concluded that these allegations could plausibly give rise to a cause of action, a fairly low threshold even after *Twombly/Iqbal. See* MJ Op. (citing *Contessa Foods Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1380-81 (Fed. Cir. 2002)). While the showing of resemblance, based on a visual inspection, is quite weak, the cited contextual factors could (barely) push these claims over the plausibility threshold.

## III.   CONCLUSION

I therefore will affirm the Magistrate Judge's decision, permit the filing of the Amended Complaint, deny IdeaVillage's motion to dismiss, and permit Counts 1, 2, and 5 (as well as Counts 3, 4, and 6, as to which dismissal was previously denied) to go forward.

Dated: July 13, 2022

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty**
**United States District Judge**

---

[8]    It is unclear whether Phillips licenses its product in this manner, contributing to the alleged confusion.

**Exhibit 1**

  

Fig. 1, perspective view    Fig. 2, front elevational view    Fig. 3, rear elevational view

  

Perspective view of MicroTouch Solo shaver (Ex. B, Tear-Down Pictures of MicroTouch Solo Shaver (First Generation))

Front elevational view of MicroTouch Solo shaver (Ex. B Tear-Down Pictures of MicroTouch Solo Shaver (First Generation))

Rear elevational view of MicroTouch Solo shaver (Ex. B, Tear-Down Pictures of MicroTouch Solo Shaver (First Generation))

  

Perspective view of MicroTouch Solo shaver (Ex. C, Tear-Down Pictures of MicroTouch Solo Shaver (Second Generation))

Front elevational view of MicroTouch Solo shaver (Ex. C , Tear-Down Pictures of MicroTouch Solo Shaver (Second Generation))

Rear elevational view of MicroTouch Solo shaver (Ex. C, Tear-Down Pictures of MicroTouch Solo Shaver (Second Generation))

**Exhibit 1**






Fig. 4, right side elevational view

Fig. 5, left side elevational view

Figs. 6-7, top and bottom plan views






Right side elevational view of MicroTouch Solo shaver (Ex. B, Tear-Down Pictures of MicroTouch Solo Shaver (First Generation))

Left side elevational view of MicroTouch Solo shaver (Ex. B, Tear-Down Pictures of MicroTouch Solo Shaver (First Generation))

Top and bottom plan views of MicroTouch Solo shaver (Ex. B, Tear-Down Pictures of MicroTouch Solo Shaver (First Generation))






Right side elevational view of MicroTouch Solo shaver (Ex. C, Tear-Down Pictures of MicroTouch Solo Shaver (Second Generation))

Left side elevational view of MicroTouch Solo shaver (Ex. C, Tear-Down Pictures of MicroTouch Solo Shaver (Second Generation))

Top and bottom plan views of MicroTouch Solo shaver (Ex. C, Tear-Down Pictures of MicroTouch Solo Shaver (Second Generation))

**Exhibit 2**

  

FIG. 1      FIG. 2      FIG. 3

Fig. 1, perspective view    Fig. 2, front elevational view    Fig. 3, rear elevational view

  

Perspective view of MicroTouch Solo shaver handle (Ex. B, Tear-Down Pictures of MicroTouch Solo Shaver (First Generation))

Front elevational view of MicroTouch Solo shaver handle (Ex. B, Tear-Down Pictures of MicroTouch Solo Shaver (First Generation))

Rear elevational view of MicroTouch Solo shaver handle (Ex. B, Tear-Down Pictures of MicroTouch Solo Shaver (First Generation))

  

Perspective view of MicroTouch Solo shaver handle (Ex. C, Tear-Down Pictures of MicroTouch Solo Shaver (Second Generation))

Front elevational view of MicroTouch Solo shaver handle (Ex. C, Tear-Down Pictures of MicroTouch Solo Shaver (Second Generation))

Rear elevational view of MicroTouch Solo shaver handle (Ex. C, Tear-Down Pictures of MicroTouch Solo Shaver (Second Generation))

## Exhibit 2

  

Fig. 4, right side elevational view      Fig. 5, left side elevational view      Figs. 6-7, top and bottom plan views

  

Right side elevational view of MicroTouch Solo shaver handle (Ex. B, Tear-Down Pictures of MicroTouch Solo Shaver (First Generation))

Left side elevational view of MicroTouch Solo shaver handle (Ex. B, Tear-Down Pictures of MicroTouch Solo Shaver (First Generation))

Top and bottom plan views of MicroTouch Solo shaver handle (Ex. B, Tear-Down Pictures of MicroTouch Solo Shave (First Generation))

   

Right side elevational view of MicroTouch Solo shaver handle (Ex. C, Tear-Down Pictures of MicroTouch Solo Shaver (Second Generation))

Left side elevational view of MicroTouch Solo shaver handle (Ex. C, Tear-Down Pictures of MicroTouch Solo Shaver (Second Generation))

Top and bottom plan views of MicroTouch Solo shaver handle (Ex. C, Tear-Down Pictures of MicroTouch Solo Shaver (Second Generation))

**Exhibit 3**



FIG. 1



FIG. 2



FIG. 3

Fig. 1, perspective view        Fig. 2, front elevational view     Fig. 3, rear elevational view







Perspective view of
MicroTouch Solo shaving
head (Ex. B, Tear-Down
Pictures of MicroTouch Solo
Shaver (First Generation))

Front elevational view of
MicroTouch Solo shaving
head (Ex. B, Tear-Down
Pictures of MicroTouch Solo
Shaver (First Generation))

Rear elevational view of
MicroTouch Solo shaving
head (Ex. B, Tear-Down
Pictures of MicroTouch Solo
Shaver (First Generation))

**Exhibit 3**





FIG. 6



FIG. 7

FIG. 4          FIG. 5

Fig. 4, right side elevational view          Fig. 5, left side elevational view          Figs. 6-7, top and bottom plan views









Right side elevational view of MicroTouch Solo shaving head (Ex. B, Tear-Down Pictures of MicroTouch Solo Shaver (First Generation))

Left side elevational view of MicroTouch Solo shaving head (Ex. B, Tear-Down Pictures of MicroTouch Solo Shaver (First Generation))

Top and bottom plan views of MicroTouch Solo shaving head (Ex. B, Tear-Down Pictures of MicroTouch Solo Shaver (First Generation))

**Exhibit 4**



Figs. 1 and 2, top, front, right
perspective view and bottom,
rear, left perspective view

Figs. 3 and 4, top and bottom
plan views

Fig. 5, right side elevational
view



Top, front, right perspective
view and bottom, rear, left
perspective view of
MicroTouch Solo shaver

Top and bottom plan views of
MicroTouch Solo shaver
blade (Ex. B, Tear-Down

Right side elevational view
Top plan view of
MicroTouch Solo shaver
blade (Ex. B, Tear-Down

**Exhibit 4**



Fig. 6, left side elevational view       Fig. 7, rear elevational view       Figs. 8, front elevational view

                    

Left side elevational view of MicroTouch Solo shaver blade (Ex. B, Tear-Down Pictures of MicroTouch Solo Shaver (First Generation))

Rear elevational view of MicroTouch Solo shaver blade (Ex. B, Tear-Down Pictures of MicroTouch Solo Shaver (First Generation))

Front elevational view of MicroTouch Solo shaver blade (Ex. B, Tear-Down Pictures of MicroTouch Solo Shaver (First Generation))

**Exhibit 5**



Fig. 1, top, front, right perspective view

Figs. 3 and 4, top and bottom plan views

Fig. 5, right side elevational view











Top, front, right perspective view of MicroTouch Solo shaver blade (Ex. C, Tear-Down Pictures of MicroTouch Solo Shaver (Second Generation))

Top and bottom plan views of MicroTouch Solo shaver blade (Ex. C Tear-Down Pictures of MicroTouch Solo Shaver (Second Generation))

Right side elevational view of MicroTouch Solo shaver blade (Ex. C, Tear-Down Pictures of MicroTouch Solo Shaver (Second Generation))

**Exhibit 5**



Fig. 6, left side elevational view          Fig. 7, rear elevational view          Fig. 8, front elevational view





Left side elevational view of MicroTouch Solo shaver blade (Ex. C, Tear-Down Pictures of MicroTouch Solo Shaver (Second Generation))

Rear elevational view of MicroTouch Solo shaver blade (Ex. C, Tear-Down Pictures of MicroTouch Solo Shaver (Second Generation))

Front elevational view of MicroTouch Solo shaver blade (Ex. C, Tear-Down Pictures of MicroTouch Solo Shaver (Second Generation))

**Exhibit 6**







FIG. 1

FIG. 2

FIG. 4

Fig. 1, perspective view

Fig. 2, front elevational view

Fig. 4, right side elevational view







| Perspective view of MicroTouch Max Titanium trimmer (Ex. I, Pictures of MicroTouch Max Titanium Trimmer) | Front elevational view of MicroTouch Max Titanium trimmer (Ex. I, Pictures of MicroTouch Max Titanium Trimmer) | Right side elevational view of MicroTouch Max Titanium trimmer (Ex. I, Pictures of MicroTouch Max Titanium Trimmer) |